Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 3434 | **DATE** | 5/18/2001 |
| **CASE TITLE** | Mary McMath vs. Bradley Industries, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 6/14/01 at 9:30 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for summary judgment [10] is denied. Defendant's motion for summary judgment [12] is denied. A status hearing is ordered for Thursday, June 14 at 9:30 A.M.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAY 21 2001 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | *eaw* docketing deputy initials | 22 |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

FILED FOR DOCKETING
01 MAY 21 AM 9:15

DOCKETED
MAY 21 2001
MAY 21 2001

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARY MC MATH,

        Plaintiff,

v.

BRADLEY INDUSTRIES, INC.,

        Defendant.

No. 99 C 3434

Judge Joan B. Gottschall

## MEMORANDUM OPINION AND ORDER

Mary McMath ("McMath") has filed suit against her former employer, Bradley Industries, Inc. ("BI"). McMath, an African-American woman, alleges that following a lay-off, BI failed to recall McMath and subsequently terminated her in violation of 42 U.S.C. §1981 and 42 U.S.C. §2000e *et seq*, Title VII of the Civil Rights Act of 1964. Both parties have moved for summary judgment. For the reasons set forth below, both parties' motions for summary judgment are denied.

### Facts

BI, a Frankfort, Illinois company with sixty employees, manufactures and sells matchbooks and related materials. McMath worked as a machine operator at BI from April, 1989 through December, 1997. From 1989 through 1995, McMath worked on an "order machine." (McMath Statement of Uncontested Facts ("SUF") at ¶7.) An order machine manufactures custom-ordered matchbooks. From 1995 through 1997, McMath worked on a "roll machine." (Id. at ¶8). A roll machine manufactures stock or blank matchbooks.

22

Before 1997, BI operated the roll line on two shifts. Ten people manned the roll line over these two shifts. In December, 1997, BI shut down the roll lines on both shifts because of mounting inventory and a decrease in demand for its product. At this time, BI laid off all ten roll line operators as well as five other machine operators who supported the roll line. BI did not recommence operations on the roll lines until February, 1998.

It is undisputed that at the time of the shut-down, BI's plan was to maintain only a temporary shut-down and to recall all employees at the end of January. Instead, BI recalled only six employees in February and decided to operate the roll line only during the day shift. In March, BI recalled a seventh employee. McMath was not among those recalled. Of the seven employees recalled, two were Asian, three were Caucasian, and two were Hispanic. Of the seven employees not recalled besides McMath, three were Asian, two were Caucasian, one was Hispanic, and one was African-American. It is undisputed that McMath and the other workers who were not recalled were later terminated. It is also undisputed that McMath continued to seek re-employment with BI following her layoff.

It is undisputed that only Stephen Bradley, owner and president of BI, and Ron Fullriede, a manufacturing supervisor at BI, could have "participated in and/or approved" the decisions not to recall McMath (McMath SUF at ¶19.). There is much dispute over the extent to which Fullriede and/or Bradley was involved with the decision-making process and had knowledge of the reasons behind the decision. McMath argues that Fullriede and Bradley have each stated that he had nothing to do with the decision and had no knowledge of the decision-making process. BI denies that the two have stated either of these things.

McMath filed a charge of discrimination based on race with the Illinois Department of Human Rights. BI argued in response to both that charge and to the charge before this court that BI decided not to recall McMath because she, unlike those who were recalled, was unable to "competently" operate multiple machines. (Def. Mem. in Sup. of Mot. for Sum. Judg. at 7.) BI maintains that when it recalled workers in February, 1998, the workload varied, and therefore the workers who were recalled needed to be "proficient" in the operation of various machines. (BI Statement of Uncontested Facts ("SUF") at ¶14.)

McMath claims that she was able to operate multiple machines: the order and roll machines. BI argues that McMath was able to operate only the roll machine, and that she could operate it only with the support of others. McMath contends that she asked to be trained so that she would not need support on the roll machine, but was refused this training. BI disputes both of these contentions. BI also claims that "McMath never accepted the opportunities afforded her to learn how to operate different machines. . . ." (BI SUF at ¶10.) McMath claims that she was never offered such opportunities but does not dispute that she could not operate any other machine than the roll and order machines. McMath also claims that she asked to be trained on a machine other than the order and roll machines, but was refused. It is undisputed that after the recall, three of the seven workers who were recalled worked primarily on only one machine.

BI has stated in the past that McMath performed her job on the roll line "satisfactorily." (Verif. Ans. to Charge of Disc. filed with the Ill. Dept. of Human Rights, attached as Exh. E to McMath SUF, at BI's Resp. to Allegation I(B)(2) on p. 2). Nevertheless, BI "objects to Plaintiff's citation to [the Verified Answer to McMath's charge filed with Ill. Dept. of Human

3

Rights]" because BI contends that the Answer is not part of "the record of this case." (BI Resp. to McMath SUF at ¶9.) BI maintains in the present suit that McMath's performance on the roll line was "barely acceptable." (BI SUF at ¶8.)

## Analysis

In this case, both parties have moved for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court must view the record and any inferences to be drawn from it in the light most favorable to the party opposing summary judgment. *See Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir. 1991). The party opposing summary judgment may not rest upon the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue for trial unless there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Initially, the court notes that although McMath has filed suit under two different statutes, 42 U.S.C. § 1981 and 42 U.S.C. § 2000 *et seq*, Title VII of the Civil Rights Act of 1964, the "methods of proof and elements of the case" under both statutes are "identical." *Von Zuckerstein v. Argonne Nat'l Lab.*, 984 F.2d 1446, 1471 (7th Cir. 1993). A plaintiff bringing a case under

either statute can establish intentional discrimination through direct evidence of discriminatory intent, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985), or through the indirect, burden-shifting method of proof established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In this case, McMath does not present direct evidence of discriminatory intent. Rather, she attempts to prove discrimination through *McDonnell Douglas* burden-shifting.

The *McDonnellDouglas* burden-shifting structure involves three steps. First, the plaintiff is required to establish a prima facie case of discrimination. *See Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1122 (7th Cir. 1994). If the plaintiff establishes a prima facie case of discrimination, a presumption of discrimination arises, and the defendant must offer a legitimate, non-discriminatory reason for the allegedly discriminatory acts. *See Baxter*, 13 F.3d at 1122. If the defendant does so, then the presumption of discrimination dissolves, and the burden shifts back to the plaintiff to show by a preponderance of the evidence that the defendant's proffered justification is a pretext for discrimination. *See id.*

*McMath's Motion for Summary Judgment*

McMath moves for summary judgment in her favor because, she argues, BI has failed to articulate a legitimate, nondiscriminatory reason for its decision not to recall her and to later terminate her. McMath argues that Bradley and Fullriede have each stated that he was uninvolved with the decision not to recall McMath and had no knowledge of why she was not recalled. Therefore, neither of them can offer a reason for the decision not to recall her.[1]

---

[1] Indeed, McMath argues that BI's stated reason for its decision, namely that McMath was unable to operate multiple machines as competently as others, was a reason that originated with BI's counsel and not with BI's personnel.

5

McMath's motion for summary judgment is denied. Although there is a genuine dispute as to whether BI's personnel have articulated a legitimate, non-discriminatory reason for BI's actions, the testimony of BI's personnel, albeit somewhat vague and confused, can be interpreted to articulate a good faith justification.

In her reply memorandum in support of her motion, McMath cites deposition testimony of Ron Fullriede stating that he was not involved with the decision to recall certain workers. What McMath fails to cite is further testimony by Fullriede suggesting that he actually was involved with the decision to recall workers:

> Q. You had no input into the decisions as to who to call back?
> A. Some inquiries were made of me of people, of different people.
> Q. Who made those inquiries?
> A. Stephen Bradley.

(Fullriede Dep. at 46:23-24, 47:1-4.)

McMath's counsel asked about the nature of those inquiries:

> Q. Do you recall what [Bradley] said, what he asked you?
> A. He was inquiring as to [the laid-off worker's] abilities, and what all she was able to do, as far as what equipment she was able to operate.

(Id. at 48:3-7.)

. . .

> Q. Did [Bradley] indicate to you why he was asking?
> A. No
> Q. Did he say it was in connection with calling people back from the layoff?
> A. He said that he was, I believe he was trying to decide who he was going to call back. I believe it was based on their abilities.

(Id. at 48:14-20.) Fullriede also noted that Bradley inquired about McMath's abilities.

Furthermore, the evidence suggests that Fullriede knew the rationale behind BI's decision-making process:

> Q. What makes you believe [that the decision to recall workers was based on people's abilities]?
> A. Well, we needed flexibility because we were going to start the roll line back up, but it wasn't going to be a full roll line. And from day to day or week to week our needs would be changing. So we needed people with a variety of abilities.

(Id. at 48:21-24, 49:1-2.)

McMath contests Fullriede's assertion that Bradley was involved with the decision-making process. McMath seizes on testimony by Bradley in which Bradley says that he was not involved in the decision to recall various workers. McMath, however, omits the following interchange between her counsel and Bradley:

> Q. Okay, And who, if you know, made the decision as to who to recall?
> A. [Fullriede] and - - the two of us at various times - -
> Q. Okay.
> A. - - discussed it.

(Bradley Dep. at 58:9-14.)

After counsel repeatedly asked Bradley whether he was "involved" with the decision to recall someone, Bradley answered that Fullriede primarily decided whom to recall, but that Fullriede kept Bradley "appris[ed]" of who should be recalled. (Id. at 60:14.) Then counsel asked Bradley what reasons motivated a decision by Fullriede to recall someone, and he responded, ". . .it's a capability issue." (Id. at 61:13.) Counsel asked what this meant, to which Bradley answered, "Well, the way we were starting back up to operate is moving people from one machine to another as the variation in the work load required. So a person had to be capable

of running whatever machine that the need to operate on a given day was." (Id. at 61:21-24, 62:1-5.)

The depositions do not clearly describe the process by which BI decided whether to recall McMath and other workers. Fullriede appears to say that Bradley, after consultation with him, made the decision about whom to recall, while Bradley states that Fullriede was the primary decision-maker and that Fullriede kept Bradley apprised of his decisions. Manifestly, Fullriede and Bradley have given somewhat confused testimony. In any event, however, the evidence suggests that Fullriede and Bradley agree that both men participated in the decision regarding McMath. It is also undisputed that no one else at BI participated in this decision. Furthermore, whether Fullriede or Bradley is credited with the final decision to recall someone, the two agree that the decision criterion for whether a worker was recalled was the extent to which she could operate multiple machines. Using this criterion, the two claim that McMath did not fare well.

McMath contends that she is entitled to summary judgment because BI has failed to articulate a legitimate, non-discriminatory reason for the decision not to recall McMath. McMath cannot be granted summary judgment, however, because a genuine issue of fact exists regarding this question. Making all reasonable inferences in favor of the non-moving party, BI, BI has presented sufficient deposition evidence to suggest that BI personnel can articulate a legitimate, non-discriminatory reason for not recalling and later terminating McMath.

*BI's Motion for Summary Judgment*

BI moves for summary judgment in its favor because, BI argues, McMath has failed to satisfy the prima facie test for discrimination as to her discharge. Specifically, BI contends that

8

McMath has failed to show that she met BI's legitimate work expectations and that non-African-Americans were treated more favorably than she was.

BI fails to discuss whether McMath has satisfied the prima facie test for discrimination in BI's failure to recall McMath. Similarly, McMath has failed to discuss this test as well. The two parties focus solely on the prima facie test for a discriminatory discharge. McMath, however, alleges discrimination not only in her ultimate discharge, but also in BI's failure to recall her. Nevertheless, the discriminatory discharge and failure-to-recall tests are similar in nature, and normally, the evidence satisfying elements of one test satisfy elements of the other. Therefore, to the extent that BI and McMath present arguments regarding the discriminatory discharge test, which are equally applicable to the failure-to-recall test, the court will not treat the parties' failure to discuss the failure-to-recall test as a sign that they do not wish, in McMath's case, to satisfy the test, or in BI's case, to contest such a showing.

*Prima Facie Tests*

McMath alleges racial discrimination in BI's termination of her and in BI's failure to recall her following her lay-off. To establish a prima facie case of discriminatory discharge, a plaintiff must show that: (1) she belongs to a protected class, (2) she performed her job according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees outside the protected class were treated more favorably by the defendant. *See Gordon v. United Airlines*, 2001 WL 322168 (7th Cir., March 29, 2001). To establish a prima facie case of discriminatory failure-to-recall, a plaintiff must show that: (1) she belongs to a protected class, (2) she applied for and was qualified for the position sought, (3) the

9

defendant rejected her for the position, and (4) the defendant hired or continued to seek a person whose race was different from her's but whose qualifications were similar to or less than her's. *See Von Zuckerstein v. Argonne Nat'l. Lab.*, 984 F.2d 1467, 1474 (7th Cir. 1993).

McMath easily satisfies the first and third elements of both prima facie tests. As an African-American, McMath belongs to a protected class. Not having been recalled and subsequently having been terminated, McMath was rejected for re-employment, and she suffered an adverse employment action. BI does not dispute any of this.

The court concludes that McMath has presented a genuine factual issue regarding the second element of both tests. It is undisputed that McMath sought re-employment with BI as a roll machine operator. There is dispute, however, over whether she met BI's legitimate work expectations. BI presents deposition evidence suggesting that McMath was "barely acceptable," (Fullriede Dep. at 68:7) and that McMath was not meeting BI's legitimate work expectations.

The evidence, however, supports a contradictory assessment. Stephen Bradley and counsel for McMath had the following exchange:

> Q: Are you aware of whether Mary McMath performed her job in a satisfactory manner?
> A: My recollection is that she did in terms of - - I have no recollection that - - to the contrary.

(Bradley Dep. at 74:11-16.) While Bradley's testimony is hardly clear, he appears to state that McMath's work performance was satisfactory, or at the least, he could not think of a reason why her performance was not satisfactory. Furthermore, BI stated in its Verified Answer to a charge of discrimination brought by McMath before the Illinois Department of Human Rights, that

McMath performed her roll line job "satisfactorily." (Exh. E to Pl. Statement of Uncontested Facts.) BI objects to citation of this Verified Answer, but BI's statement in the prior proceeding was an admission, which under Federal Rule of Evidence 801(d)(2), is admissible evidence at trial. Because a motion for summary judgment can be judged based on admissions of the parties on file, and BI's prior statement is an admission, this court may use the admission to help inform its decision. In this case, BI's admission that McMath's performance was satisfactory is sufficient evidence to establish a genuine fact issue regarding whether McMath was qualified for her job and whether she was meeting BI's legitimate work expectations. *See McDonnell Douglas*, 411 U.S. at 802 (citing employer's characterization of plaintiff's past work performance as being "satisfactory" in support of its holding that plaintiff had satisfied the second element of the prima facie test.)

BI also asserts that McMath has failed to satisfy the fourth element of the prima facie test for discriminatory discharge. BI's primary argument regarding the fourth element is that in order to establish it, McMath must demonstrate that "he or she was subjected to an adverse employment action while nonmembers of the plaintiff's protected class were not subjected to the same actions." (Def. Mem. in Sup. of Mot. for Sum. Judg. at 8, citing *Naylor v. Georgia-Pacific Corp.*, 875 F.Supp. 564, 575 (N.D.Ia 1995.) BI contends that McMath has failed to satisfy the fourth element because non-members of her class, namely two Caucasians, three Asians and one Hispanic, were terminated along with her.

The problem is that BI has incorrectly interpreted the very case it cites. BI interprets the above quotation from *Naylor v. Georgia-Pacific* to mean that in order to prove the fourth

11

element, a plaintiff needs to show that *all* non-members of her protected class were more favorably treated. The *Naylor* court's explanation of the fourth element shows that this interpretation is incorrect: "To prove a disparate treatment claim, the plaintiff must show that he or she was 'similarly situated in all relevant respects' to *a* non-member of the protected class who was more favorably treated. 875 F.Supp. at 574 (emphasis added), citing *Lanear v. Safeway Grocery*, 843 F.2d 298, 300 (8th Cir.1988). Therefore, a plaintiff needs evidence of just *one* similarly situated non-member of her class who was not subjected to the adverse employment action that she suffered. *See also Nolen v. City of Chicago*, 1999 WL 755052, *4 (N.D.Ill. Sept. 3, 1999) (holding that a plaintiff need only show that one similarly situated non-member of her class was preferentially treated). In this case, it is undisputed that all those who were recalled were non-members of McMath's protected class. It is irrelevant to proof of the fourth element that non-members of McMath's class were terminated along with her.

Nevertheless, this discussion raises a more important question about whether McMath has satisfied the fourth element of both prima facie tests. In a discriminatory discharge case, a plaintiff needs to point to a *similarly situated* non-member of her class who was treated better than she was. In a failure-to-recall case, a plaintiff needs to show that her qualifications were *at least as good as the qualifications of at least one worker* whom her employer recalled. Therefore, in order to prove both versions of the fourth element of the prima facie tests, McMath needs to show that she was similarly situated to, or at least as well-qualified as, one of the seven workers whom BI recalled. Because BI misstated the controlling test, neither side has adequately addressed this issue. Moreover, in view of BI's vague and confusing evidence as to the bases for

its recall decisions, it is unlikely that it can do so. The relative qualifications of the employees involved can be judged only in relation to some standard, which is equivocal on this record.[2] Therefore, BI's motion for summary judgment must be denied.

## Conclusion

For the foregoing reasons, McMath's and BI's motions for summary judgment are denied.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: May 18, 2001

---

[2] BI claims that the standard it applied was an individual's ability to operate multiple machines. The problem, however, is that no individual clearly took responsibility for the decision that was made, let alone articulated the standard by which he made it. Moreover, the evidence suggests that even if this was the standard utilized, it may be questionable as a good faith justification since the evidence suggests that the recalled workers did not actually have to have the ability to operate multiple machines.

13